**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | Case No. 2:18-mn-2873-RMG<br><br>This document relates to:<br><br>The Cases Listed in the Table of Cases in Exhibit 1. |

## REPLY IN SUPPORT OF THE UNITED STATES' MOTION TO HOLD IN ABEYANCE CERCLA COST RECOVERY AND CONTRIBUTION CLAIMS

The United States explained that it would conserve the resources of both the Court and the parties to hold in abeyance the litigation of claims brought against the United States under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Dkt. No. 7987 (motion); Dkt. No. 7987-1 (memorandum in support). Nothing in the opposition filed by the Plaintiffs asserting CERCLA claims against the United States, Dkt. No. 8271, demonstrates otherwise.

As a preliminary matter, the United States acknowledges a change in circumstance since the filing of its motion. Specifically, one of the bases for the proposed abeyance—that the Environmental Protection Agency (EPA) was reviewing the designation of perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate/sulfonic acid (PFOS) as hazardous substances for purposes of CERCLA to decide whether to reconsider the designation—is no longer a concern. While there is active litigation challenging EPA's designation of PFOA and PFOS as hazardous substances, EPA has decided not to reconsider the designation.[1] As such, the United States is no

---

[1] *Chamber of Com. v. EPA*, Case No. 24-1193 (D.C. Cir.), ECF Doc. No. 2135418. In the event EPA's designation is set aside, that would impact the CERCLA claims asserted in this case.

longer relying on EPA's potential reconsideration as a basis for its motion. But the United States'

second basis for its motion, related to CERCLA's prohibition regarding double recovery, is a

separate and distinct reason to hold the CERCLA claims in abeyance under the circumstances

presented in this Multidistrict Litigation (MDL).

      The United States has been actively engaged in a CERCLA clean-up of per- and

polyfluoroalkyl substances (PFAS) from aqueous film-forming foams (AFFF) use even before

certain PFAS were designated as hazardous substances by EPA.[2] While the federal government

continues its ongoing clean-up activities, an abeyance would conserve Court and party resources,

and help ensure that United States taxpayers are not subject to paying Plaintiffs for the same

costs that Plaintiffs may recover through other claims against PFAS manufacturers or the United

States in this litigation.

      Plaintiffs' opposition fails to squarely acknowledge, much less confront, the fact that they

seek the same costs under CERCLA that they seek from third parties as tort damages and from

the United States under the Federal Tort Claims Act (FTCA). Plaintiffs assert it would be better

to proceed with the CERCLA claims because it is easier and faster (for Plaintiffs) to establish

liability under CERCLA, *see* Dkt. No. 8271 (Pls.' Opp'n) at 12-13, and that there would be no

inequity to the United States if the CERCLA claims proceed at the same time as the tort claims,

*id.* at 13-14. That is incorrect. As explained below, a mere finding of liability does not dispose of

the CERCLA claims, and forcing the parties and the Court to simultaneously resolve all forms of

claims would be an inefficient use of the parties' and the Court's time, especially where

---

[2] Contrary to Plaintiffs' assertion that the United States is attempting to delay the resolution of this litigation "for as long as possible," Pls.' Opp'n 17, the United States only seeks to hold in abeyance the CERCLA claims. The United States is carrying out ongoing response actions to address PFAS contamination at various sites. See *PFAS Taskforce Policies*, https://www.acq.osd.mil/eie/eer/ecc/pfas/tf/policies.html (last visited December 23, 2025).

Plaintiffs contend the Court can decide the CERCLA claims now but then somehow adjust the amount of recoverable CERCLA costs later based on the outcome of Plaintiffs' tort claims. Most importantly, it would be extraordinarily inequitable for United States taxpayers to pay for the same costs under CERCLA that Plaintiffs seek from the manufacturers of PFOS and PFOA as tort damages. For all these reasons, the Court should exercise its discretion and hold the CERCLA claims in abeyance.

## ARGUMENT

In their opposition, Plaintiffs do not dispute that CERCLA bars double recovery. Their opposition largely rests on three assertions: (1) that under CERCLA, liability is easy to establish; (2) that the parties should continue to litigate all claims at once; and (3) that the Court can perform additional work later to ensure there is no double recovery in violation of CERCLA. Pls.' Opp'n 8, 13. These assertions show Plaintiffs' mischaracterization of resolution of claims under CERCLA. It is a statute meant for clean-up of hazardous substances, not to provide a blank check to parties to incur costs and then file a claim for "reimbursement." Pls.' Opp'n 15. In fact, CERCLA specifies what costs are recoverable and includes a bar on double recovery that prohibits parties from obtaining a windfall by recouping the same costs multiple times.

The United States' initial request for an abeyance explained that because of CERCLA's unique statutory prohibition, FTCA claims and other claims against third parties should be resolved before the parties and the Court expend limited resources litigating Plaintiffs' CERCLA claims against the United States. Dkt. No. 7987-1 (Mot.) at 6-7. The Court should reject Plaintiffs' notion that CERCLA cost recovery and contribution claims are the right route because they are "easier" for Plaintiffs when compared to other claims in this litigation and grant the

United States' request for an abeyance until at least Plaintiffs' claims against third parties are resolved.

Plaintiffs acknowledge that there is no Fourth Circuit standard for district courts to follow when granting a motion for an abeyance. *See* Pls.' Opp'n 4. As such, courts in the circuit have looked to a variety of factors to determine whether a stay is warranted in each circumstance. *See* Mot. 2-3; *see also, e.g.*, *Canales v. Opw Fueling Components, LLC*, No. 5:22-CV-459-BO, 2024 U.S. Dist. LEXIS 156100, at *1 (E.D. N.C. Aug. 22, 2024) (recognizing that a "court has inherent authority to manage its docket to promote 'economy of time and effort for itself, counsel, and for litigants'" and, in determining whether to stay a proceeding, a court generally considers the interest of judicial economy, the hardship and equity to the moving party if the action is not stayed, and the potential prejudice to the non-moving party); *United States v. Ford*, No. 3:09-CR-107, 2019 U.S. Dist. LEXIS 160817, at *4 (W.D. N.C. Sep. 20, 2019) (noting that where the non-movant objects to a stay, the court must "'ascertain' whether a stay should issue by 'balanc[ing]' its 'benefit[s]' of a stay with any resultant 'hardship'").

1. **Even applying the factors cited by Plaintiffs, judicial economy and the hardship to the United States would still outweigh any potential prejudice to Plaintiffs.**

   *A. An abeyance would promote judicial economy and conserve party resources.*

   An abeyance of the CERCLA cost recovery and contribution claims is in the interest of judicial economy and the efficient use of party resources. Most Plaintiffs' tort and FTCA claims predate (by years) the CERCLA claims that were only added to the MDL after the designation of PFOA and PFOS as hazardous substances in July 2024.

   Plaintiffs contend that because CERCLA is "relatively straightforward," the CERCLA claims should move forward at the same time as the other claims. Pls.' Opp'n 12-13. Although it is correct that CERCLA imposes strict liability on four broad classes of potentially responsible

parties, 42 U.S.C. § 9607(a), Plaintiffs concede, as they must, that resolving a CERCLA claim also involves the "challeng[e]" of proving the recoverability of specific response costs. Pls.' Opp'n 13. This is because the only costs recoverable under CERCLA are those that fall under § 9607(a)(4). 42 U.S.C. § 9607(a)(4); *see also Rhodes v. Cnty. of Darlington*, 833 F. Supp. 1163, 1177 (D.S.C. 1992); *Weyerhaeuser Corp. v. Koppers Co., Inc*., 771 F. Supp. 1406, 1414 (D. Md. 1991) ("The National Contingency Plan sets forth detailed guidelines with which ... parties must comply in order to collect the costs of a clean up of hazardous waste" under CERCLA.) (citing 42 U.S.C. § 9607(a)(4)(B)).

Indeed, the main thrust of the National Contingency Plan (NCP), 40 C.F.R. pt. 300, is to "establish procedures and standards for responding to releases of hazardous substances." 42 U.S.C. § 9605. Plaintiffs are thus wrong to dismissively suggest that the United States may just forego establishing that Plaintiffs' costs are consistent with the NCP, or that determining 23 different Plaintiffs' entitlement to their individual claimed costs would be a "narrow inquiry" that would have a "speedy resolution." Pls.' Opp'n 13. This is also why two Plaintiffs have filed *partial* summary judgment motions: one as to liability only, Dkt. No. 7420; and the other as to liability and limited alleged CERCLA response costs, Dkt. No. 7421. And it is why the United States responded to one motion for partial summary judgment, Dkt. No. 7421, under Rule 56(d)—because, unsurprisingly—there is more information that is needed to be able to determine the United States' liability for asserted costs. Dkt. No. 7988.

Moving forward simultaneously with FTCA and CERCLA claims against the United States for the same costs would require a commitment of limited agency resources that may be

unnecessary.[3] As the United States explained in its motion for abeyance, Mot. 5-6, CERCLA cost recovery and contribution claims are fact intensive. Even if liability under CERCLA is broad, the parties and the Court will have to address whether the costs claimed by Plaintiffs were in fact necessary "response costs" consistent with the NCP, 40 C.F.R. pt. 300, as required under the statute. This will require significant time and resources from all parties. There will be production and review of documents, discovery disputes, and experts. Indeed, parties typically employ expert witnesses and require discovery to analyze whether claimed costs are recoverable under CERCLA. *See, e.g.*, *R.E. Goodson Constr. Co. v. Int'l Paper Co*., No. CIV.A.4:02-4184RBH, 2006 WL 4916336, at *32 (D.S.C. Dec. 15, 2006) (describing competing expert testimony on NCP consistency).

The United States is currently litigating claims for the same asserted costs on the FTCA front and the CERCLA front. Allowing the first-filed FTCA claims to proceed first would conserve the Court's and the parties' resources for costs that are the subject of both claims. Plaintiffs argue that regardless of whether the Court grants the abeyance, the United States would still have to defend claims under state analogs to CERCLA. Pls.' Opp'n 14. Not so. Any cognizable claims under a state analog to CERCLA should be held in abeyance for the same reasons the United States is proposing to hold the CERCLA claims in abeyance. In addition, Plaintiffs are pursuing tort claims against the manufacturers of AFFF, *e.g. Liberty Utils. (Litchfield Park Water & Sewer) Corp. v. 3M*, No. 2:23-cv-2627 (D. Ariz.), and the resolution of those claims will clearly impact and could obviate the need to separately seek cost recovery under CERCLA.

---

[3] Although Plaintiffs assert "the hope" that pushing ahead with the CERCLA claims will "obviate the need for at least some of the complex tort and other claims that plaintiffs are pursuing," Pls.' Opp'n 2, the United States notes that Plaintiffs do not seek to hold those other claims in abeyance.

Litigating to a final decision 23 separate plaintiffs' CERCLA claims also would not serve the principles of judicial economy or conserve party resources where Plaintiffs concede that there is the potential the Court would have to address CERCLA's bar on double recovery. *See* Pls.' Opp'n 8 (acknowledging the possibility of double recovery). Plaintiffs contend that the Court can always take additional steps to "police[] against double recovery," *id.*, which would obviously involve additional work on the part of the Court and the parties to compare which costs are sought under Plaintiffs' multiple claims against multiple parties. That is not efficient for the Court or the parties. In addition to the overlapping FTCA and CERCLA claims against the United States, Plaintiffs also seek those costs from manufacturers. Plaintiffs fail to address the added factor of claims asserted against the PFAS manufacturers. For example, the City of Fort Worth alleges a negligence claim against manufacturer defendants for costs including to "assure water quality in compliance with federal [maximum contaminant levels]; sample and analyze water and other media for PFAS; respond to public inquiries and manage public relations regarding the contamination; investigate treatment options; arrange to treat water by installing, operating, and maintaining filtration systems; increase the frequency of water quality testing and monitoring; and manage and dispose of potentially contaminated water treatment residuals and biosolids." Compl. ¶ 307, *City of Fort Worth v. United States*, No. 2:25-cv-02636-RMG (D.S.C. Mar. 27, 2025). The City of Fort Worth also brought CERCLA claims against both Defendant manufacturers and the United States for "all response costs . . . incurred through a decision-making process guided by a preliminary assessment/site inspection, field sampling plan, quality assurance project plan, and engineering evaluation/cost analysis, or the substantial equivalents thereof." *Id*. ¶ 254-55. The overlapping issues between the CERCLA and tort claims warrant an abeyance of the CERCLA claims.

7

Plaintiffs' reliance on the Ninth Circuit's decision in *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458 (9th Cir. 2024) is misplaced. *Santa Clarita* is not instructive as to the issue of whether this Court should hold in abeyance the CERCLA claims in light of the other active claims brought by Plaintiffs under tort law and the FTCA. In *Santa Clarita*, the circuit court did not address whether an abeyance of CERCLA claims was appropriate based on double recovery considerations. Instead, the court addressed whether the district court was correct in denying CERCLA declaratory relief (in the form of a liability determination) where the plaintiff previously obtained tort damage for the costs claimed under CERCLA. *See id.* at 483. The court concluded that because there may still be future costs that would not be covered by the tort damages, the district court erred in denying such declaratory relief. *Id.* Here, the tort claims have not been resolved, and the United States is not asking for dismissal of Plaintiffs' CERCLA claims, or denial of any declaratory relief.

If anything, *Santa Clarita* shows that establishing liability is a separate question than the complexity of analyzing the issues of fact and law relating to NCP consistency, 40 C.F.R. pt. 300. *See id.* at 478-83. As discussed above, proceeding with the CERCLA claims will be demanding of the Court and all parties' resources. *Santa Clarita* also provides the model the United States proposes here, where double recovery was appropriately addressed because the tort claim preceded the CERCLA claim, thereby avoiding any potential for double recovery.

   B.   *Absent an abeyance there would be hardship and inequity to the United States.*

As noted above, Plaintiffs propose that the parties proceed with all claims and that the Court "will have ample opportunity at the appropriate time to ensure that it does not grant a judgment awarding compensation for the same clean-up costs twice." Pls.' Opp'n 8. Besides the significant time and resources the United States would have to expend to litigate Plaintiffs' cases

on all fronts, and then determining post hoc compensation for those claims, there would be an obvious inequity should Plaintiffs recover the costs from the American taxpayer before the manufacturers of the products at issue. The Court should hold in abeyance the CERCLA claims on this ground alone.

### C. Plaintiffs would not be prejudiced by a stay.

Granting an abeyance of the CERCLA cost recovery and contribution claims would not prejudice Plaintiffs. Plaintiffs can still resolve their other claims. For example, Plaintiffs claim potential hardship to the City of Lakewood if the city cannot pursue its claims to recover CERCLA costs from alleged contamination from PFOS and PFOA releases at Air Force and Army bases, but the Lakewood Water District has also brought the same claim against Defendant Manufacturers. *See* First Am. Compl. ¶¶ 16-17; 491-92, *Lakewood Water Dist. v. United States*, No. 2:20-cv-02899 (D.S.C. June 10, 2025). An abeyance of the CERCLA claims against the federal government would not prevent the Lakewood Water District from pursuing the same claims against the manufacturers.

Citing no evidence in support, Plaintiffs also assert that any damages they receive from PFAS manufacturers will be insufficient to cover their costs. Pls.' Opp'n 16. But even if the United States may provide a " 'potential contributing solution' for the shortfall damages that the manufacturers are able to pay," Plaintiffs should at least first resolve their claims against the manufacturers who "develop[ed], manufactur[ed], distribut[ed], market[ed], and/or s[old]" AFFF before seeking possible contribution from the United States. *See* First Am. Compl. ¶ 16, *Lakewood Water Dist. v. United States*, No. 2:20-cv-02899 (D.S.C. June 10, 2025). The potential prejudice would not outweigh hardship to the United States or considerations of judicial economy.

**CONCLUSION**

For the reasons set forth in the memorandum of law in support of the United States'

motion and in this reply, the United States respectfully requests that the Court hold the CERCLA

cost recovery and contribution claims against the United States in abeyance until Plaintiffs have

resolved their FTCA claims against the federal government and Plaintiffs' claims against the

manufacturers.


Date: January 6, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment & Natural Resources Division

 */s/ Sanya Shahrasbi*
SANYA SHAHRASBI
SHARI HOWARD
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 305-5810 (Shahrasbi)
sanya.shahrasbi@usdoj.gov
shari.howard@usdoj.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2026, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which shall send notification of such filing to all known

counsel of record.

 */s/ Sanya Shahrasbi*
Sanya Shahrasbi
Trial Attorney